## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| VENKATESH DAGUBATTI, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. §2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:19-CR-29-WMR-JSA-1 |
| UNITED STATES, | : | |
| Respondent. | : | CIVIL ACTION NO. |
| | : | 1:22-CV-2191-WMR-JSA |

## <u>MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION</u>

Movant Venkatesh Dagubatti has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. §2255. (Doc. 106). Movant seeks to challenge the constitutionality of his conviction and sentence following his guilty plea in the Northern District of Georgia. As an initial matter, Movant's motion for leave to file an affidavit in support of his §2255 motion [Doc. 109] is **GRANTED** *nunc pro tunc*.

I.     <u>Procedural and Factual History</u>

A.     <u>Facts</u>

In April 2017, Movant, using GigaTribe user name Hemanth49, distributed child pornography to an undercover agent in Germany.[1] (Doc. 72, Presentence Investigation Report ("PSR") ¶8). In January 2018, again using user name Hemanth49, Movant distributed child pornography to a Swiss undercover agent.

---

[1]     GigaTribe is a peer-to-peer file sharing program. *United States v. Asher*, 564 F. App'x 963, 966 (11th Cir. 2014).

(PSR ¶9).   Information provided from Comcast indicated that the IP address associated with the download came from a subscriber at an address in Freemont, California.  (PSR ¶9).

Six months later on June 6, 2018, Movant engaged in a chat conversation with an undercover FBI agent in New Jersey and distributed child sexual abuse material to that agent.  (PSR ¶¶9, 10).  Movant was living in California at the time of the chat and relocated to Georgia shortly thereafter.  (PSR ¶11).  Later in June Movant told the FBI agent that he lived in Atlanta, Georgia.  (PSR ¶12).

On August 3, 2018, Movant shared thirty images and videos of child sexual abuse material to the FBI agent.  (PSR ¶13).  After tracing Movant's IP address to an address in Duluth, Georgia, the FBI in Atlanta executed a search warrant at that residence, encountered Movant, and seized his electronic devices.  (PSR ¶¶14, 16). Movant agreed to speak to the agents, verified that he used the screenname Hemanth49, and admitted that he had various types of pornography, that he searched for and downloaded pornography containing images of boys, and that he knew what he was doing was illegal.  (PSR ¶19).  A forensic analysis of Movant's computers indicated that he possessed 1,775 images and 222 videos of child sexual abuse material.  (PSR ¶24).

B.      Procedural History

1.      The Plea

In January 2019, a federal grand jury in the Northern District of Georgia indicted Movant on two counts of distributing and possessing at least one visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. §§2252(a)(2) and 2252(a)(4)(B).  (Doc. 1).  On June 17, 2019, while represented by Benjamin Black Alper, Movant entered a guilty plea to the indictment pursuant to a plea agreement.  (Docs. 17, 17-1 ("Plea Agreement")).  Therein, the Government agreed to recommend the maximum downward level adjustment for Movant's acceptance of responsibility, unless Movant were to engage in conduct inconsistent with accepting responsibility after entering into the plea agreement.  (Plea Agreement ¶15).  Likewise, and consistent with that same caveat – that is, unless Movant were to engage in conduct inconsistent with accepting responsibility – Movant and the Government agreed to jointly recommend sixty months of imprisonment, well below the 210-262 month guidelines range.  (Plea Agreement ¶18; PSR, Part D).

Movant agreed that the recommendations, stipulations, and guideline computations were not binding on the Court [Plea Agreement ¶32] and the plea agreement contained an appellate and collateral waiver on any ground except for claims of ineffective assistance of counsel [*Id.* ¶33].  In the plea agreement and also

3

during the plea colloquy Movant affirmed that he had read the agreement in its entirety, "carefully reviewed every part of it" with his attorney, understood the terms and conditions in the agreement and voluntarily agreed to them, and was fully satisfied with his counsel's representation. (*Id.* at 17; *see generally* Doc. 55 ("Plea Tr.")).

Also during the plea colloquy, Movant stated under oath that: he understood the constitutional rights he was waiving by pleading guilty; he understood the charges to which he was entering his guilty plea and the consequences thereof, including a potential maximum penalty of twenty years; he agreed with the Government's description of the terms of the plea agreement; his decision to plead guilty was not the product of threats, force, or promises other than those contained in the agreement; he had sufficient time to discuss the charges and his case with counsel and he was satisfied with counsel's representation; he had conferred with counsel about how the sentencing guidelines might apply in his case; he understood that the guidelines were only advisory, and that it was not possible to determine the exact guidelines for his case until after the PSR was completed; and he understood that the Court had authority to impose a sentence more or less severe than the guidelines range. (Plea Tr. at 11-14, 16, 22-23, 25-27, 31-37).

The Court emphasized that it might not accept the plea agreement's recommendations but that Movant would still be bound by his guilty plea, which

Movant indicated he also understood. (*Id.* at 37). And Movant confirmed his understanding that he was waiving his right to appeal or collaterally attack his conviction and sentence except for those circumstances outlined in the plea agreement. (*Id.* at 33).

After the Government recited the factual basis for the plea, Movant did not disagree with that synopsis, and affirmed that he was, in fact, guilty of the offenses in the indictment. (*Id.* at 24-31). The Court found that Movant was competent to understand the proceedings, and that his decision to plead guilty was free of coercive influence of any kind with full knowledge of the charges against him and the consequences of his plea. (*Id.* at 39-40).

The PSR used the 2018 Guidelines Manual to determine Movant's offense level and recommended a base offense level of 22. (PSR ¶32). The PSR recommended: a two-level upward adjustment because the material involved a prepubescent minor who had not reached twelve years of age [PSR ¶33]; a five-level enhancement because Movant distributed child pornography in exchange for valuable consideration but not pecuniary gain [PSR ¶34]; a four-level increase because the material involved sadistic or masochistic conduct or other depictions of violence [PSR ¶35]; a two-level upward adjustment because a computer was used in commission of the offense; and a five-level upward adjustment because the offense involved 600 or more images [PSR ¶37]. With the three-level decrease for

acceptance of responsibility to which the parties agreed, Movant's total offense level was a 37. (PSR ¶44). The PSR noted that the Government and Movant agreed to recommend that Movant be sentenced to five years in custody, much lower than the calculated guideline range of 210-262 months. (PSR ¶45; Plea Agreement ¶18).

### 2. Post-Plea And Presentence Proceedings

Three months after Movant entered his guilty plea, he wrote a letter to the Court which prompted the Court to hold a hearing and grant defense counsel's motion to order a competency evaluation.[2] (Docs. 25, 26, 29). Thereafter, Movant was found competent to stand trial and to enter a guilty plea. (Doc. 34).

Movant then requested new counsel, and the Court appointed Jeffrey Ertel to represent him. (Docs. 36, 41). On June 10, 2020, Mr. Ertel filed a motion on Movant's behalf to withdraw the guilty plea. (Doc. 46). In the motion to withdraw, Movant argued that he was "not in his right mind" when he pleaded guilty because of the stress associated with the case and his self-imposed house arrest. (*Id.* at 2). Movant wrote a letter to the Court on July 15, 2020, asking to terminate Mr. Ertel because Mr. Ertel was not properly communicating with Movant or providing Movant with information he requested about the case, and because Mr. Ertel was providing ineffective assistance by "Defending Government." (Doc. 51).

---

[2]   In particular Movant wrote, *inter alia*, that he requested a death sentence because "[d]eath is better than living as a criminal." (Doc. 25 at 4).

a.   *September 1, 2020 Hearing*

The Court held a hearing on the motion to withdraw the plea on September 1, 2020.  (Doc. 56).  The Court first conducted an *ex parte* discussion with Movant and Mr. Ertel regarding Movant's desire to relieve Mr. Ertel of his representation, during which Movant indicated to the Court that they had resolved their differences, and that he wanted to stay with Mr. Ertel and withdraw the motion for new counsel.  (*Id.* at 16-22).

Thereafter, the Court asked Mr. Ertel if he had any evidence he wished to present on the motion to withdraw the plea.  (*Id.*).  Mr. Ertel responded that he had no evidence to present, that he had argued in the motion what Movant had represented to him, that is, that Movant was not guilty and wanted to proceed to trial, and that Movant believed there was a lack of communication with Mr. Alper.  (*Id.* at 22-23).  Mr. Ertel also conveyed to the Court that he did not believe there was a defect in the plea colloquy.  (*Id.* at 22).

The Court then placed Movant under oath and questioned him.  (*Id.* at 25).  Movant told the Court that he wanted to withdraw the plea because he felt pressured to enter the plea, his attorney misled him about the case, and he did not have access to the evidence against him.  (*Id.* at 28-34).  Movant also admitted that the videos were on his computer, but he claimed they were located there unintentionally.  (*Id.*

at 35).  Because the Court felt that it needed to hear from Mr. Alper, the hearing was continued to a later date.  (*Id.* at 43).

### b.  *October 6, 2020 Hearing*

On October 6, 2020, the Court held another hearing on the motion.  (Doc. 95). During that hearing, Mr. Alper testified that he provided the discovery to Movant and reviewed it with him, and that he also examined the child sexual abuse images at the FBI's offices.  (*Id.* at 18).  After reviewing the discovery, Mr. Alper told Movant that he thought that the Government would be able to prove its case against him at trial, and advised Movant of the mandatory minimum and maximum statutory sentence Movant was facing.  (*Id.* at 20).

Movant agreed with Mr. Alper's assessment of the case and instructed him to engage in plea negotiations with the Government and confirmed in writing that he wanted to plead guilty.  (*Id.* at 21, 29-30; Doc. 63).  During plea negotiations, Movant routinely pushed Mr. Alper to obtain an agreement with the Government and to get a court date set. (Doc. 95 at 29).  Mr. Alper did, in fact, negotiate a plea agreement with the Government, and that agreement included a joint recommendation to a sixty-month term of imprisonment.  (*Id.*).  After discussing the terms and going over the plea agreement with Movant, Movant told Mr. Alper that he wanted to enter a guilty plea.  (*Id.* at 22).  Mr. Alper did not threaten, or observe anyone else threaten, Movant to enter a guilty plea.  (*Id.*).

According to Mr. Alper, Movant did not appear overly anxious on the day he was set to enter the plea; nor did he express any reservations about it. (*Id.* at 31). Mr. Alper had no concerns about Movant's mental state on that day. (*Id.* at 32). The Court continued the hearing to October 14, 2020, to provide Movant with time to speak with Mr. Ertel about whether he wanted to testify. (*Id.* at 38; Doc. 88).

### c. *October 14, 2020 Hearing*

During that third hearing, Mr. Ertel informed the Court that Movant essentially wanted to raise an ineffective assistance of counsel claim, *i.e.,* that Mr. Alper did not conduct a proper investigation into Movant's innocence or the strength of the Government's case, and that but for counsel's ineffective assistance Movant would not have entered into the plea. (Doc. 88 at 4-5, 8).

Specifically, Movant challenged how the IP addresses were traced to locate Movant and the devices containing the sexually abusive material – because according to Movant, it would have been scientifically impossible for the FBI to have found his devices using the tracing method stated in the warrant affidavit. (*Id.* at 9). As a result, Mr. Ertel sought more time to hire a computer expert to assist with whether Movant's theory was plausible. (*Id.* at 9-11, 24-25). The Court granted Movant's request, but noted that if at that time Movant were to raise and lose a claim that his plea was involuntary based on Mr. Alper's ineffective assistance, "he loses

that argument later, and it won't be able to be brought up because it will be a thing decided in the case. . . ." (*Id.* at 21-22).

        d.    *December 2, 2020 Hearing*

On December 2, 2020, the Court held a fourth and final hearing on Movant's motion to withdraw the plea. (Doc. 89). During that hearing the Court asked Movant about the computer expert's findings and whether Movant intended to pursue an ineffective assistance of counsel claim. (*Id.* at 4). Mr. Ertel explained that he had retained a computer expert and had conducted a virtual call with the expert and Movant regarding the evidence in the case, specifically related to Movant's theory about the IP addresses. (*Id.*). He then advised the Court that based on this conversation he concluded that Movant had no basis to argue "that Mr. Alper didn't conduct an investigation that would have led to something that would prove [Movant's] innocence." (*Id.*). Consequently, Mr. Ertel informed the Court that ethically he did not believe that he could present any further argument to the Court regarding the IP address theory, and declined to do so. (*Id.* at 14).

Movant then sought to represent himself and argued the issue to the Court *pro se*. (*Id.* at 15-20). The Government presented testimony from SA Kabrhel about how the FBI tracked Movant through the IP addresses, as well as the computer forensic analysis that located the child sexual abuse material images and videos on Movant's devices. (*Id.* at 22-30).

The Court found that there was no evidence to support Movant's claims that he was innocent or that he was pressured into his plea, particularly in light of Movant's statements during the plea colloquy that he willingly entered into the plea and that he was guilty of the charges; instead, it appeared to the Court that Movant had "buyer's regret" when the reality set in that he would have to spend time in prison. (*Id.* at 52-54). Consequently, the Court denied the motion to withdraw the plea [*Id.* at 54] and proceeded to sentencing. In the Court's subsequent written Order denying the motion to withdraw, the Court explained that "the Court does not find that Defendant's prior counsel was in fact ineffective, nor could Defendant's current counsel find any reason to indicate that prior counsel did not conduct his investigation or communicate with Defendant in a reasonably prudent manner." (Doc. 68).

### 3.   Sentencing

At the sentencing hearing, Movant objected to the five-level enhancement for distribution of child pornography in exchange for valuable consideration, which the Court overruled after hearing from the parties. (Doc. 89 at 60). The Court also granted the Government's motion to withdraw its recommendation that Movant receive the three-level downward adjustment for acceptance of responsibility since Movant had not accepted responsibility for his conduct. (*Id.* at 62, 94). After those

11

rulings, Movant's new advisory guidelines range was calculated at 292-365 months. (*Id.* at 94).

Movant requested a below-guidelines sentence between 97-121 months, and the Government recommended a 292 month sentence at the low end of the guidelines range. (*Id.* at 70, 78). The Court granted Movant's request for a downward variance and sentenced him to 120 months of imprisonment – 172 months below the low-end of the guidelines range. (*Id.* at 86; *see also* Doc. 67).

4.    Appeal

Mr. Ertel filed a notice of appeal with the Eleventh Circuit on Movant's behalf. (Doc. 69). Thereafter, Movant filed a motion to terminate Mr. Ertel's representation [Doc. 74], which the Court granted, referred the matter to the undersigned for appointment of appellate counsel [Doc. 75], and Saraliene Durrett was appointed to represent Movant on appeal [Doc. 85]. Ms. Durrett filed an *Anders* brief with the Eleventh Circuit[3] and, on November 16, 2021, the Eleventh Circuit found no arguable issues of merit and affirmed Movant's conviction and sentence. (Doc. 104).

---

[3]    In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court held that if counsel determines that an appeal would be wholly frivolous, counsel should notify the appellate court and request to withdraw.

5.   The §2255 Motion

Movant executed the instant *pro se* §2255 motion on May 25, 2022.  (Doc. 106).  His grounds for relief are difficult to decipher, but construing his claims liberally, it appears that he raises the following ineffective assistance of counsel claims, *i.e.,* that counsel was ineffective for:  (1) failing to study and understand Movant's case; (2) failing to present evidence to support Movant's arguments regarding the IP addresses, including hiring a computer expert; and (3) having an "unprofessional approach" and presenting "[n]o good argument to represent" Movant.   (*Id.*).  It is not clear from the motion which counsel Movant claims provided ineffective assistance; therefore, the Court will discuss his claims as against both Mr. Alper and Mr. Ertel.  For the following reasons, the undersigned **RECOMMENDS** that the instant §2255 motion be **DENIED**.

II.   Standard of Review

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction

13

to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's §2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

    A.   Movant's Ineffective Assistance Claims Against Mr. Alper Fail.

        1.   Law-Of-The-Case Prohibits Movant's Claim That Mr. Alper Was Ineffective.

Under the law-of-the-case doctrine, "courts are 'bound by findings of fact and conclusions of law' previously made in the same case unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly

14

erroneous and would work manifest injustice.'" *United States v. Victores*, 402 F. App'x 465, 466-67 (11th Cir. 2010) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citations omitted) (alteration in original).  This doctrine applies where, as here, a decision is made by the district court and that decision is not challenged on appeal. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.").

After conducting several hearings on the same issues Movant raises here, the Court already rejected Movant's argument that his plea was involuntary because Mr. Alper provided ineffective assistance of counsel.  Movant has not shown that any of the exceptions to the law-of-the-case doctrine apply.  Insofar as Movant raises these claims of ineffective assistance of counsel in connection with Mr. Alper, therefore, any such claims are barred by law-of-the-case.  *See, e.g., United States v. Zogheib*, 510 F. App'x 15, 15-16 (2d Cir. 2013) ("Because defendant's claims that Mr.

Benjamin provided ineffective assistance have been considered and rejected, that determination continues to govern the same issues in this subsequent stage of defendant's case."); *United States v. Cham*, No. CR 14-591-DMG, 2020 WL 11421468, at *3 (C.D. Cal. Dec. 30, 2020) (stating that where court addressed same ineffective assistance argument raised in the §2255 motion in the order denying the movant's motion to withdraw his plea, reconsideration of the issue was barred by the law of the case); *United States v. Ayers*, No. 1:11-CR-063, 2014 WL 6879261, at *7 (S.D. Ohio Dec. 4, 2014) (finding in subsequent §2255 motion law of the case barred ineffective assistance claim raised and rejected as part of the motion to withdraw guilty plea); *United States v. Mers*, No. 1:01-CR-101, 2005 WL 354665, at *8 (W.D. Mich. Dec. 16, 2005) (finding ineffective assistance claim rejected by the courts in the defendant's motion for new trial and on appeal was barred by the law of the case).

2.  <u>The Ineffective Assistance Claims Are Procedurally Barred.</u>

Movant's ineffective assistance claims in connection with Mr. Alper also are procedurally defaulted. "A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so." *Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014). *See also Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on

direct appeal, it will be procedurally barred in a 28 U.S.C. §2255 challenge.").  This conclusion is no different where, as here, appellate counsel filed an *Anders* brief. *See, e.g., United States v. Walker*, No. 6:06-CR-111-DCR-1, 2010 WL 1434277, at *4 (E.D. Ky. Mar. 24, 2010) ("Where appellate counsel files an Anders brief, the court examines that brief, as well as any pro se response, for cognizable arguments concerning the issues sought to be raised with a later section 2255 motion."); *United States v. Latham*, No. 1:07-CR-270, 2010 WL 161436, at *1-2 (W.D. Mich. Jan. 8, 2010) (finding procedurally defaulted §2255 claim not raised on appeal where counsel filed *Anders* brief).

The movant can "avoid the procedural bar by establishing that either of the following exceptions applies:  (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence."  *Hill*, 569 F. App'x at 648.  "[T]o show cause for procedural default, [a §2255 movant] must show that some objective factor external to the defense prevented [the movant] or his counsel from raising [the] claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam).  "Actual prejudice means more than just a possibility of prejudice; it requires that the error worked to [the movant's] actual and substantial disadvantage[.]"  *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010).  To demonstrate a miscarriage of justice based on actual innocence, the movant must demonstrate that "a constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1234-35 (internal quotation marks and citations omitted).  A movant claiming that he is actually innocent must show factual innocence rather than legal innocence. *Rozelle v. Secretary, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012). Movant has not shown cause, prejudice, or actual innocence to overcome the procedural default of his claims that Mr. Alper provided constitutionally ineffective assistance.  Consequently, those claims are procedurally barred.

### 3.   Movant's Claims Fail On The Merits.

Finally, even if Movant's claims that Mr. Alper was ineffective were not prohibited by law-of-the-case or procedurally barred, he still has not demonstrated that he is entitled to relief.  First, Movant swore under oath during the plea colloquy that he was satisfied with Mr. Alper's representation [Plea Tr. at 22], and these statements "constitute a formidable barrier in any subsequent collateral proceedings" because "there is a strong presumption that statements made during the plea colloquy are true." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (stating that statements during plea colloquy that, *inter alia*, movant was satisfied with counsel's representation "are afforded great weight").  Movant has provided no evidence to overcome the strong presumption that his sworn statements – *i.e.,* that he was fully satisfied with Mr. Alper's representation – were true.  Accordingly, his ineffective assistance claims

against Mr. Alper also fail for this reason. *See, e.g., Mitchell v. United States*, No. 2:11-CV-8013-LSC-JHE, 2013 WL 6490560, at *12 (N.D. Ala. Dec. 10, 2013) (dismissing ineffective assistance of counsel claim where movant offered no evidence to contradict sworn statements during plea colloquy that he was fully satisfied with counsel's representation); *cf. Martin*, 949 F.3d at 670 (denying request for evidentiary hearing for ineffective assistance claim where, *inter alia*, movant stated under oath during the plea colloquy that he was satisfied with counsel's representation). But finally, he also has not shown that Mr. Alper was, in fact, constitutionally ineffective.

a.   *Ineffective Assistance Of Counsel Standard*

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018); *see also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the

20

circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

b.   *Mr. Alper Did Not Provide Ineffective Assistance*.

As discussed previously herein in Section I.B.2.d., this Court already rejected Movant's arguments that Mr. Alper was ineffective during the proceedings on the motion to withdraw the plea. Movant has not persuaded this Court otherwise. Indeed, Mr. Alper did, in fact, investigate Movant's case and determined that the Government would be able to prove the charges against Movant at trial, and Movant has provided no evidence whatsoever that would demonstrate that Mr. Alper's subsequent decision to negotiate an extremely favorable plea on Movant's behalf was anything other than a reasonable professional decision.[4]

---

[4]   To the degree that Movant argues that Mr. Alper should have raised the issue of the IP addresses, as discussed further herein in connection with his claims against Mr. Ertel, Movant has not shown that the IP address theory – or any other theory, for that matter – had merit.

Moreover, as part of the negotiated plea the Government agreed to recommend the mandatory minimum sentence, which was fifteen years less than the maximum Movant would have faced had he gone to trial with no plausible defense. Indeed, had Movant proceeded to trial the Court may not have sentenced him to a below-guidelines sentence as it did here even after he attempted to withdraw his plea. Under these circumstances, the Court cannot find that a rational person in Movant's situation would have rejected the plea. *See, e.g., United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding the movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where he received the "exceptional benefit" of lowering his sentence of imprisonment by eight years). Consequently, Movant has not shown that Mr. Alper was constitutionally ineffective.

B.   Movant Has Failed To Show That Mr. Ertel Provided Ineffective Assistance.

To the degree that Movant's ineffective assistance of counsel claims relate to Mr. Ertel, he also has failed to demonstrate any such ineffective assistance. To that end, Movant claims that Mr. Ertel failed to study and understand Movant's case, present evidence to support his arguments regarding the IP addresses, including a computer expert, and to present a "good argument to represent" Movant. These arguments all fail.

First, it is clear from the record and the extensive hearings held by this Court that Mr. Ertel did, in fact, study and understand Movant's case. Moreover, Mr. Ertel's decision as to what issues to raise in the motion was a strategic decision to which this Court should provide deference. *See Cavalieri v. Virginia*, No. 1:18CV356 (LMB/JFA), 2020 WL 426488, at *11 (E.D. Va. Jan. 27, 2020) (stating that it was counsel's decision to decide the best strategy at a suppression motion since, *inter alia*, "[t]actical decisions, such as what issues to raise, lie solely within the province of counsel."); *see also Jones v. Barnes*, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy.").

Importantly, after reviewing Movant's case Mr. Ertel did not find any defect in the plea colloquy that would constitute a basis for Movant withdrawing his guilty plea. But he nevertheless filed a motion to withdraw the plea on Movant's behalf and raised the issue Movant presented to him, that is, that Movant was not in his right mind and was pressured to enter into the plea. And then after that argument appeared to be unsuccessful, Mr. Ertel later pivoted to pursue the ineffective assistance of counsel claim Movant requested him to raise against Mr. Alper. The Court cannot find that Mr. Ertel's performance was deficient for advancing arguments Movant specifically requested him to raise.

And insofar as Movant claims Mr. Ertel was ineffective for failing to raise, or hire a computer expert to support, the IP address argument, Mr. Ertel did, in fact, retain and consult with a computer expert in order to do so and the expert did not support Movant's theory or provide any helpful information. Consequently, counsel cannot have been ineffective for failing to raise this meritless claim. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1170 (11th Cir. 2020) ("[W]e have repeatedly held that if a particular claim itself is without merit," any failure of counsel to raise or adequately pursue it "'cannot constitute ineffective assistance of counsel.'") (citations omitted); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) ("[A]ny deficiencies of counsel in failing to raise or adequately pursue [a meritless claim] cannot constitute ineffective assistance of counsel."); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Notably, even after Mr. Ertel declined to present further argument, Movant presented his own facts and arguments to the Court in connection with the IP address theory and the Court rejected it.

Finally, just as with the claim that Mr. Alper provided ineffective assistance, Movant cannot show prejudice, that is, that a rational person in Movant's position would have rejected the plea. Accordingly, Movant has failed to demonstrate that he

received ineffective assistance of either counsel, and the instant motion to vacate should be denied.

## IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Venkatesh Dagubatti's motion to vacate his sentence [Doc. 106] be **DENIED WITH PREJUDICE**.

## V.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional

claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's claims are procedurally barred, barred by law-of-the-case, and that Movant has not demonstrated ineffective assistance of counsel. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 25th day of April, 2023.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

26